# In the United States Court of Federal Claims
### Pro Se

<table>
<tr><td>

RONALD SCHOW,

              Plaintiff,

      v.

THE UNITED STATES OF AMERICA,

              Defendant.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

No.  23-1787C<br>(Filed: May 27, 2025)

</td></tr>
</table>

Ronald Schow, pro se, Zionsville, IN.

Jana Moses, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were, Martin F. Hockey, Deputy Director, and Patricia M. McCarthy, Director, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Ronald Schow served as an officer in the United States Army from 1996 until his retirement in October 2017. He began his service as a second lieutenant, was promoted to captain in 2000, and was recommended for promotion to major in 2006. The Army, however, mistakenly omitted Mr. Schow's name from the list of candidates for promotion sent by the President to the Senate for confirmation, as is required by 10 U.S.C. § 624(c). The Army then committed another error when it issued an order promoting Mr. Schow to the rank of major in October 2006, even though the Senate had never confirmed his appointment. Admin. Rec. ("AR"), ECF No. 19, at 59. He served at that rank until 2013, when the Army became aware of its error and revoked the promotion order, returning Mr. Schow to the rank of captain. AR 60.

In accordance with its regulations, the Army determined Mr. Schow served as a major in a de facto status between the time his promotion order was issued and the time it was revoked. AR 60 (citing Army Reg. 600-8-29 ¶ 1-22(b) (2005)). Because he served in a de facto status, under the regulation he was permitted to keep the higher pay and allowances he received during that period. Id. The issue before the Court is whether, under 10 U.S.C. § 1407(c), the pay he received for service at the higher grade, and was permitted to retain pursuant to Army regulations, should have been taken into account when calculating his retired pay base.

The Defense Finance and Accounting Service ("DFAS") concluded that the pay Mr. Schow received during his service as a de facto major could not be considered in calculating his retired pay base, because it was not pay "to which [Mr. Schow] was entitled" within the meaning

of 10 U.S.C. § 1407(c). AR 38–39. The Defense Office of Hearings and Appeals ("DOHA") affirmed DFAS's decision. AR 131–35; see also AR 161–64 (denying Mr. Schow's request for reconsideration). Mr. Schow then filed the present action. See Compl., ECF No. 1.

Currently before the Court are 1) the government's motion to dismiss for lack of jurisdiction under RCFC 12(b)(1); 2) the government's motion to dismiss under RCFC 12(b)(6) or in the alternative for judgment on the administrative record ("MJAR"), ECF No. 22; and 3) the plaintiff's cross-motion for judgment on the administrative record, ECF No. 23. For the reasons set forth below, the government's motion to dismiss under RCFC 12(b)(1) is **DENIED**, its motion to dismiss or in the alternative for judgment on the administrative record is **GRANTED**, and Mr. Schow's cross-MJAR is **DENIED**.

## BACKGROUND

### I.    Mr. Schow's Promotion History

Mr. Schow entered active duty in 1996 as a second lieutenant in the United States Army Infantry, with prior service in the Army Reserve and National Guard. Compl. ¶ 4; see also AR 53. In August 2000, the Army promoted Mr. Schow to the rank of captain. AR 10. Five years later, in September 2005, an Army promotion selection board recommended that Mr. Schow be promoted to the grade of major. AR 55. The promotion action was delayed when an Inspector General investigation substantiated allegations that Mr. Schow engaged in certain misconduct. AR 57. A promotion review board eventually examined the matter and recommended that Mr. Schow be retained on the promotion list. AR 55.

Pursuant to 10 U.S.C. § 624, after the President approves the recommendation of a promotion board through delegated authority, the Secretary of the Army places the names of officers approved for promotion on a list. Id. § 624(a)(1); see also Army Reg. 600-8-29 ¶¶ 1-11, 1-12 (2005). Then, with exceptions not relevant here, appointments are made from the list by the President with the advice and consent of the Senate. 10 U.S.C. § 624(c).

In this case, however, despite a promotion review board recommendation that Mr. Schow's name be retained on the promotion list, "[Mr. Schow's] promotion nomination was not presented to the Senate for [c]onfirmation and was never confirmed." AR 55; see also AR 66–70. Nonetheless, on October 31, 2006, the Army issued orders promoting Mr. Schow to the rank of major, effective August 1, 2006. AR 57.

Some four and a half years later, in the spring of 2011, an Army promotion selection board recommended that Mr. Schow be promoted again, this time to the rank of lieutenant colonel "below the primary zone." AR 55.[1] As it processed the promotion board's recommendation, the Army discovered that Mr. Schow's nomination to the rank of major was never confirmed by the Senate. AR 57.

---

[1] Below the zone promotions "accelerate the promotion of outstanding officers who have demonstrated performance and indicated potential superior to those who otherwise would be promoted." Army Pamphlet 600-3 ¶ 6-8.

On or about February 4, 2012, the Office of the Deputy Chief of Staff G-1 initiated an informal investigation into the circumstances that led to the invalid promotion. AR 64–70. The investigation concluded that an error had been made "at the action officer level" likely due to the transitioning of action officers around the time. AR 68–70. The investigation concluded that Mr. Schow bore no responsibility for the error. AR 55.

On November 14, 2012, at least nine months after the Army discovered its error, it notified Mr. Schow that his 2006 promotion was not valid. AR 57–58. It advised Mr. Schow that a new promotion review board would be convened "to make a recommendation whether [his] name should be retained on the [2006] Major [] promotion selection list and forwarded for appointment by the President and confirmation by the Senate." AR 57 (citing Army Reg. 600-8-29, Ch. 8 "Promotion Review Boards" (2005)). The Army further advised Mr. Schow that in the meantime he would "retain the current rank and pay grade of Major until a final determination [was] made." Id.[2]

In April 2013, the Army revoked the invalid 2006 order promoting Mr. Schow to the grade of major. AR 60; see also Army Reg 600-8-29, ¶ 1-22(a)(1) (2005) ("A promotion order will be revoked when . . . the commander who executed the promotion, or a higher commander, determines that the promotion is void because . . . [it] was not authorized by competent authority."). As a result, Mr. Schow reverted to the rank of captain. AR 55.

Army Reg 600-8-29 ¶ 1-22(b) (2005) provides that where an officer's promotion is declared void and it is determined "that the officer had, before the declaration, accepted the promotion (for example, worn the insignia) in good faith and worked in the higher grade, then he or she will be deemed to have served in the higher grade in a de facto status." See also Army Reg. 600-8-29 Glossary (2005) (defining de facto officers as "[o]fficers who have accepted an erroneous promotion in good faith and actually performed the duties of the higher grade").[3] The Army therefore permitted Mr. Schow to retain the higher pay and allowances he had received during the period of his de facto service. AR 60.

Thereafter, in February of 2015, Mr. Schow was again recommended for promotion to the rank of major. AR 55. The President forwarded his nomination to the Senate for

---

[2] It is not clear from the administrative record before the Court what the new promotion review board recommended, or what actions were subsequently taken.

[3] In other regulations, the Army lists out four factors relevant to de facto status, all of which indirectly appear in Army Reg. 600-8-29 ¶ 1-22(b) (2005). These are: (1) whether a promotion order has been issued; (2) whether the service member "occupied the higher grade in good faith"; (3) whether the service member "actually discharged the functions of the higher grade"; and (4) whether "[t]here is no absolute statutory bar to his or her receipt of the pay at the higher grade." Army Reg. 600-8-19 ¶ 1-20(b) (controlling enlisted promotions and demotions).

confirmation. <u>Id.</u> However, in January of 2017, the Senate returned his nomination unconfirmed. <u>Id.</u>

## II.     Mr. Schow's Retirement

Mr. Schow submitted his request for retirement shortly after his nomination to the rank of major was returned in January of 2017. AR 55. On February 8, 2017, Colonel Steve Turner, Jr., Chief of the Officer Division of the Office of the Deputy Chief of Staff G-1 of the Army, wrote a memorandum detailing the events surrounding Mr. Schow's failed promotions as relevant to his upcoming retirement. AR 55–56. Col. Turner acknowledged that "only DFAS can calculate [Mr. Schow's] final retired pay" but explained that, in the opinion of the Army G-1 Compensation Division, "under current statutory and regulatory guidelines" (which he did not identify) "[Mr.] Schow's de facto time at the grade of [major] should be used for the calculation of [his] pension under the High Three retirement rule." AR 55–56.[4] Mr. Schow brought Col. Turner's memorandum to his retirement counseling session and was told that it would be forwarded to DFAS for consideration. <u>See</u> AR 37.

Mr. Schow's retirement became effective October 1, 2017. AR 9. On October 17, 2017, DFAS's Retired Pay Department notified Mr. Schow of the amount of monthly retired pay he would be receiving. <u>See</u> Pl.'s Resp. to Mot. to Dismiss Ex. 1, ECF No. 11-1; <u>see also</u> AR 13 (worksheet dated October 17, 2017). He learned at that time that, in computing his high-three average, the Army had decided that it would not consider the pay he received during his service as a de facto major because, in DFAS's view, it was not "pay to which he was entitled" under 10 U.S.C. § 1407(c). Pl.'s Resp. to Mot. to Dismiss Ex. 1.

## III.     DFAS Determination

Some four months after he retired, on February 6, 2018, Mr. Schow sent DFAS an email seeking review of its October 17, 2017 determination. <u>See</u> AR 37. He described the events surrounding his failed promotions. <u>Id.</u> He also reminded DFAS of Col. Turner's recommendation that, in calculating his high-three average, the Army should take into consideration the pay he received during his de facto service in the grade of major. <u>Id.</u>

DFAS rejected Mr. Schow's request that his high-three average be recalculated and that he receive additional retired pay. AR 38–39. It explained that under 10 U.S.C. § 1407, a service member's retired pay base is "[t]he total amount of monthly basic pay <u>to which the member was entitled</u> for the 36 months (whether or not consecutive) out of all the months of active service of

---

[4] As discussed in greater detail below, the "high three retirement rule" to which Col. Turner referred is set forth at 10 U.S.C. § 1407. It provides that the retired pay base for persons entitled to retired pay for regular service "is the person's high-three average determined under subsection (c)." 10 U.S.C. § 1407(b). Subsection (c) states in turn that a person's high-three average is "the amount equal to [] the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by [] 36."

the member for which the monthly basic pay <u>to which the member was entitled</u> was highest, divided by 36." AR 38 (quoting 10 U.S.C. § 1407(c)). DFAS further explained to Mr. Schow that "[w]hile the Army's de facto status determination allowed you to keep the pay you had received, you are not legally entitled to that pay," and so the pay received could not be included in calculating his high-three average. <u>Id.</u>

## IV. DOHA's Decision

Mr. Schow appealed DFAS's decision to DOHA on May 26, 2018. AR 41–50. In response, on October 12, 2018, DFAS provided DOHA with an administrative report explaining its decision. AR 72–78. On July 30, 2019, DOHA affirmed DFAS's decision. AR 131–35. Like DFAS, DOHA relied upon the language in 10 U.S.C. § 1407(c) referencing the basic pay "to which the member was entitled." AR 133. It found that the use of the word "entitled" "suggest[s] that Congress intended that retired pay was to be based on the pay for the rank to which the member was legally appointed." AR 134.

DOHA found unavailing Mr. Schow's reliance on the Supreme Court's decision in <u>United States v. Royer</u>, 268 U.S. 394 (1925). In <u>Royer</u>, the Court held that equitable principles preclude the government from requiring a de facto officer to return the higher pay that he received during his de facto service in a higher grade, even though the appointment to the higher grade was not valid. <u>See</u> 268 U.S. at 398 (ruling that "the money having been paid for services actually rendered in an office held de facto, and the government presumably having benefited to the extent of the payment, in equity and good conscience he should not be required to refund it"). DOHA reasoned that <u>Royer</u> "did not establish that the de facto rank should be used for any subsequent pay computations, including retired pay." AR 134.

Mr. Schow filed a request for reconsideration on August 28, 2019. <u>See</u> Compl. ¶ 103.[5] DOHA denied that request in October 2019. AR 161–64; <u>see also</u> <u>In Re: (redacted) Claimant</u>, 2019 WL 9829096 (Oct. 8, 2019).

## V. This Action

Mr. Schow filed this action on October 10, 2023. <u>See</u> ECF No. 1. On February 12, 2024, the government filed a motion to dismiss pursuant to RCFC 12(b)(1) alleging that Mr. Schow's complaint is time-barred under the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501. Def.'s Mot. to Dismiss, ECF No. 8. The Court directed that the government file the administrative record to illuminate whether Mr. Schow "knew or should have known that the claim existed" more than six years before this suit was filed. Status Conference Order, ECF No. 17 (quoting <u>Young v. United States</u>, 529 F.3d 1380, 1384 (Fed. Cir. 2008)). After it filed the administrative record, the government renewed its motion to dismiss under RCFC 12(b)(1) for lack of subject-matter jurisdiction. Def.'s MJAR, ECF No. 22. It also filed a motion to dismiss under RCFC 12(b)(6) or in the alternative for judgment on the administrative record. <u>Id.</u> Mr. Schow filed a cross-motion for judgment on the administrative record. Pl.'s MJAR, ECF No. 23.

---

[5] Mr. Schow's request for reconsideration does not appear in the administrative record.

Oral argument was held on the motions on May 8, 2025. See ECF No. 30.


**DISCUSSION**

I.      **The Government's Motion to Dismiss Under RCFC 12(b)(1)**

The government has filed a motion to dismiss Mr. Schow's complaint under RCFC 12(b)(1), for lack of subject-matter jurisdiction. When ruling on such a motion, the Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Where the government challenges a plaintiff's allegations of jurisdiction in a motion to dismiss under RCFC 12(b)(1), only those factual allegations that the government does not controvert are accepted as true. Shoshone Indian Tribe of Wind River Reservation v. United States, 672 F.3d 1021, 1030 (Fed. Cir. 2012). Where jurisdictional facts are controverted, the Court "may consider relevant evidence in order to resolve the factual dispute." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); see also Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) (finding that a court may "inquire into jurisdictional facts" in ruling on a motion to dismiss under RCFC 12(b)(1)).

Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

As described above, the rules for computing Mr. Schow's retired pay are set forth at 10 U.S.C. § 1407. As is the case with other similar statutes, § 1407 is money-mandating for jurisdictional purposes because it "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (quoting Mitchell, 463 U.S. at 217); see also Lewis v. United States, 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006) (identifying statutes governing retired pay that are money-mandating); Sawyer v. United States, 930 F.2d 1577, 1580 (Fed. Cir. 1991) (holding that the disability retirement pay statute, 10 U.S.C. § 1201, is money-mandating). Therefore, it is undisputed that Mr. Schow's claims fall within this Court's jurisdiction under the Tucker Act.

The government argues, however, that 28 U.S.C. § 2501—which states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues"—precludes the Court

from exercising its Tucker Act jurisdiction. See <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988) ("The 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed."). According to the government, Mr. Schow's claim accrued on the day he retired (October 1, 2017) which was more than six years before this suit was filed (October 10, 2023).

It is well-established that a claim accrues under 28 U.S.C. § 2501 "when all the events have occurred which fix the liability of the Government," <u>and</u> "the plaintiff knew or should have known of the existence of the events fixing the government's liability." <u>John R. Sand & Gravel Co. v. United States</u>, 457 F.3d 1345, 1355–56 (Fed. Cir. 2006) (first quoting <u>Goodrich v. United States</u>, 434 F.3d 1329, 1333 (Fed. Cir. 2006); then citing <u>Goodrich</u>, 434 F.3d at 1333; <u>Hopland Band of Pomo Indians</u>, 855 F.2d at 1577; <u>Kinsey v. United States</u>, 852 F.2d 556, 557 n.* (Fed. Cir. 1988)), <u>aff'd</u>, 552 U.S. 130 (2008).

In this case, the event that fixed the government's liability was DFAS's final determination of the amount of Mr. Schow's retired pay. See <u>Waite v. United States</u>, 230 Ct. Cl. 731, 733 (1982) (holding that a federal employee's claim that the government unlawfully failed to give him credit for two additional periods of federal service and unused sick leave accrued at the time the government calculated his annuity). It is undisputed that DFAS's calculation of Mr. Schow's retired pay was finalized on October 17, 2017, and memorialized in a letter of the same date from DFAS's Retired Pay Department to Mr. Schow. The government fails to explain how Mr. Schow would have had a ripe claim by October 1, when there was still no final decision from DFAS regarding the calculation of his retired pay.[6]

Additionally, before October 17, Mr. Schow could not have known how DFAS would treat the pay he received during his de facto service for purposes of calculating his retired pay base. Until that point, Mr. Schow had no notice that DFAS had made a final determination regarding the issue. Nor had he received the first disbursement of his retired pay (which also could have put him on notice regarding DFAS's determination not to include the pay he received during his de facto service in calculating his high-three average).

Finally, the Court is unpersuaded by the government's argument that—under the reasoning of <u>Martinez v. United States</u>, 333 F.3d 1295 (Fed. Cir. 2003) and related discharge cases—Mr. Schow's claim accrued on October 1, 2017, the day he retired. See 333 F.3d at 1303 ("In a military discharge case . . . the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge."). A plaintiff's cause of action challenging a discharge accrues at the

---

[6] In fact, the record reflects that DFAS was still considering how to treat the pay Mr. Schow received during his de facto service until at least October 10. See AR 11 (October 6, 2017 DFAS Report reflecting inclusion of pay Mr. Schow received during his de facto service as major when determining his retired pay); AR 12 (October 10, 2017 transaction report directing that the October 6 calculations be revisited); AR 13 (October 17, 2017 worksheet reflecting a calculation of Mr. Schow's retired pay base that does not include the pay he received as a de facto major).

time of discharge because at that time all events fixing the government's liability for the allegedly unlawful discharge have occurred. Id. But Mr. Schow is not challenging a discharge; nor is he challenging his retirement. He is challenging DFAS's determination of his retired pay. That determination did not occur until October 17, 2017, which was several weeks after Mr. Schow's retirement became effective.

The Court has considered the government's remaining arguments concerning the statute of limitations and has concluded that they lack merit. Mr. Schow's claim accrued on October 17, 2017, his complaint was timely filed, and the Court has jurisdiction over his claims under the Tucker Act.

## II.    The Cross-Motions for Judgment on the Administrative Record

As noted, the parties have filed cross-motions for judgment on the administrative record under RCFC 52.1.[7] In deciding those motions, the Court makes "factual findings from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Id. at 1356. The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc., 404 F.3d at 1356).

In this case, the relevant facts are undisputed. The resolution of Mr. Schow's claims turns on a pure question of law: the interpretation of 10 U.S.C. § 1407. See Leming v. Sec'y of Health & Hum. Servs., 98 F.4th 1107, 1111 (Fed. Cir. 2024) (stating the proper interpretation of a statute is a question of law). The Court reviews such purely legal determinations de novo, without deference to DFAS or DOHA. See Banks v. Merit Sys. Prot. Bd., 854 F.3d 1360, 1361 (Fed. Cir. 2017); see also Harrington v. Dep't of Vet. Affs., 981 F.3d 1356, 1358 (Fed. Cir. 2020) ("We review the Board's determinations of law for correctness without deference to the Board's decision.") (citation omitted); Acuna v. Equal Emp. Opportunity Comm'n, No. 2024-2114, 2025 WL 685915, at *2 (Fed. Cir. Mar. 4, 2025) (observing that a court must "exercise

---

[7] The government has also filed a motion to dismiss for failure to state a claim under RCFC 12(b)(6). The government's motion to dismiss relies in part upon documents in the administrative record. Such documents are considered tmaterials outside the pleadings. Peterson v. United States, 104 Fed. Cl. 196, 203 (2012) (citing Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1228 (D.C. Cir. 1993)). The Court will therefore treat the government's motion under RCFC 12(b)(6) as part of its cross-motion for judgment on the administrative record under RCFC 52.1. See Peterson, 104 Fed. Cl. at 203–04 (holding where a case turns on action taken by an administrative agency, "treatment of defendant's motion for . . . dismissal as one for judgment upon the administrative record pursuant to RCFC 52.1, as opposed to summary judgment, is appropriate"); Dawson v. United States, 75 Fed. Cl. 53, 54 (2007) (treating a motion to dismiss under RCFC 12(b)(6) as one for judgment on the administrative record); Arroyo v. United States, 116 Fed. Cl. 691, 696 n.6 (2014) (same).

[its] 'independent judgment' about the correctness of an agency's statutory interpretation." (quoting Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024))).

"Statutory interpretation begins with the language of the statute, the plain meaning of which [courts] derive from its text and its structure." Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting McEntee v. Merit Sys. Prot. Bd., 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning." Id. (citing Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006)); see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) (observing that a court's "analysis begins with 'the language of the statute'" and "where the statutory language provides a clear answer, it ends there as well" (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992)) (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992))).

The statutory provision at issue here, 10 U.S.C. § 1407(c), provides that an individual's high-three average, which serves as the basis for calculating their retired pay, is equal to "the total amount of monthly basic pay to which the member was entitled for the 36 months . . . out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by [] 36." 10 U.S.C. § 1407(c) (emphasis added). The question before the Court is whether the salary that the Army paid Mr. Schow during his de facto service as a major qualifies as "pay to which [he] was entitled" within the meaning of 10 U.S.C. § 1407(c). If so, then the statute requires that pay to be considered in determining his high-three average.

As the Supreme Court has observed, "[b]oth in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies." Estate of Cowart, 505 U.S. at 477. "[Entitlement] does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right." Id.; see also Black's Law Dictionary (12th ed. 2024) (defining "entitle" to mean "[t]o grant a legal right to or qualify for").

In this case, Mr. Schow does not argue that he was entitled to be promoted to the rank of major. Clearly, he was not, because he did not satisfy the prerequisites for such a promotion: presidential appointment and confirmation by the Senate. The question is instead whether he was entitled to receive the pay of a major based on his de facto service, notwithstanding that his appointment to that rank was legally invalid. The governing precedent makes clear that the answer to that question is no.

In the military context, service members' entitlement to pay is based on statute. Favreau v. United States, 317 F.3d 1346, 1357 (Fed. Cir. 2002) ("It is well-established that 'a soldier's entitlement to pay is dependent upon statutory right.'" (quoting Bell v. United States, 366 U.S. 393, 401 (1961))). Therefore, "[t]he appropriate way to evaluate the merits of [a plaintiff's] claim [of entitlement to pay] is by examining the statutory and regulatory provisions." Id.

Under the relevant statutes here, members of the uniformed service who are on active duty "are entitled to the basic pay of the pay grade to which assigned or distributed." 37 U.S.C. § 204(a) (captioned "Entitlement"). And "commissioned officers of the uniformed services (other

than commissioned warrant officers) are assigned by the grade or rank in which serving to the [appropriate] pay grade[]." 37 U.S.C. § 201(a)(1).

It is well-established that "a service member is entitled only to the salary of the rank to which he is appointed and in which he serves." Smith v. Sec'y of Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004); see also Skinner v. United States, 594 F.2d 824, 831 (Ct. Cl. 1979) (citing 37 U.S.C. § 204) ("[A]n officer is entitled to the pay of the position to which he was legally appointed."). Mr. Schow was therefore entitled to the pay of a captain, which was the last rank to which he was lawfully appointed.

Mr. Schow contends that—notwithstanding the foregoing—the Supreme Court's decision in Royer established a service member's entitlement to receive the pay of the rank at which he served in a de facto basis. See Pl.'s MJAR at 2 (asserting that Royer "is the seminal case for a service member's entitlement to pay earned in a de facto status"). Mr. Schow's reliance on Royer is misplaced.

The plaintiff in Royer was a first lieutenant who was erroneously promoted to major instead of captain. 268 U.S. at 395. Royer performed the duties of a major for several months and received the pay of a major until the Army became aware of the error and demoted him to the rank of captain. Id. Upon separation, the Army deducted from Royer's pay, as an overpayment, the difference between the pay of a captain and that of a major for the period during which Royer (erroneously) served as a major. Id. at 395–96. Royer then filed a lawsuit to recover that amount. The Supreme Court held that Royer must be regarded as a de facto major because he "occupied the office and discharged its duties in good faith and with every appearance of acting with authority." Id. at 397. It found that "the money having been paid for services actually rendered in an office held de facto, and the government presumably having benefited to the extent of the payment, in equity and good conscience he should not be required to refund [the de facto major pay]." Id. at 398.

The issue in Royer was not, as it is here, whether the plaintiff was entitled to be paid the salary of a major based on his de facto service as a major. It was whether the government could recover from him the payments that the Army had made to him in error. The Court in Royer, in fact, expressly declined to address whether Royer could have filed suit against the Government for any unpaid salary arising from his de facto service. Id.

Moreover, just three years after Royer was decided, the Court of Claims held that Royer does not afford service members an entitlement to file suit to recover unpaid salary for a position to which they were never validly appointed. See Beeman v. United States, 65 Ct. Cl. 431, 435 (1928). In that case, the plaintiff's provisional appointment to ensign was held invalid because he had not been recommended for the appointment by a board of three naval officers or found physically qualified by a board of medical officers to perform the duties required in time of war. The court held that "in the absence of proof of compliance with these requirements of the statute it must be held that under the provisional appointment he was not entitled to the pay of an ensign, and, consequently, he is not entitled to recover here." Id.

As in Beeman, Mr. Schow was not entitled to receive the pay of a major, because he was not lawfully appointed to that position. See also Romero v. United States, 24 Ct. Cl. 331, 335

(1889) ("The judicial decisions are uniform that one claiming a salary must prove his legal title to the office, and that an officer <u>de facto</u> and not <u>de jure</u> cannot maintain an action for salary."). And because Mr. Schow was not entitled to receive the pay of a major, the Army was not obligated to consider that pay when it calculated his high-three average under 10 U.S.C. § 1407(c).[8]

Finally, the Court acknowledges Mr. Schow's service, including several combat-related deployments. It also recognizes that Mr. Schow bears no blame for the Army's mishandling of his promotion and is the victim of an injustice. Regrettably, however, the Court does not believe that it can find him "entitled" to the pay of a position to which he was not lawfully appointed.


## <u>CONCLUSION</u>

For the reasons set forth above: 1) the government's motion to dismiss pursuant to RCFC 12(b)(1) is **DENIED**; 2) the government's motion to dismiss under RCFC 12(b)(6) or in the alternative for judgment on the administrative record, ECF No. 22, is **GRANTED**; and 3) plaintiff's cross-motion for judgment on the administrative record, ECF No. 23, is **DENIED**. In addition, the government's initial motion to dismiss, ECF No. 8, is **DENIED** as moot.

The Clerk of Court is directed to enter judgment accordingly.


**IT IS SO ORDERED.**



s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge


---

[8] In his MJAR, Mr. Schow claims that he is entitled to "de facto status as a Lieutenant Colonel from 2012 or 2013 until 2017." Pl.'s MJAR at 11. There are several problems with this claim. For one thing, Mr. Schow did not include it in his complaint or raise it during the proceedings before DFAS and DOHA. As a result, there is no evidence in the record to support his claim that he met the criteria for de facto service as a lieutenant colonel. And, in any event, even if the Court found that Mr. Schow served in the rank of lieutenant colonel in a de facto basis, that would not entitle him to an adjustment of his retired pay for the reasons set forth above.